# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| **SANH VAN DINH,**<br><br>***Petitioner*,**<br><br>**v.**<br><br>**MARKWAYNE MULLIN, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, U.S. ATTORNEY GENERAL; MARCOS CHARLES, ACTING EXECUTIVE ASSOCIATE DIRECTOR, ICE AND REMOVAL OPERATIONS; TODD LYONS, ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE); AND WARDEN, EL PASO PROCESSING CENTER;**<br><br>***Respondents*.** | § § § § § § § § § § § § § § § § § § § § § | **No. 3:26-CV-01558-LS** |

**<u>MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

This is one of more than 700 habeas corpus petitions filed in this Court in which a petitioner seeks release from immigration custody. In this case, Petitioner challenges detention for more than six months following a final order of removal. The petition is **DENIED**.

**Background**[1]

Petitioner is a citizen and national of Vietnam who was ordered removed by an Immigration Judge.[2] The government detained Petitioner to effect his removal to Vietnam and has taken significant steps toward that end.[3] Indeed, the government in its last filing indicated that it was awaiting travel documents for Petitioner to Vietnam and that it would pursue removal to an alternate third country if Vietnam refuses Petitioner's repatriation.[4]

Importantly, the government represents that on March 16, 2026, Petitioner refused to sign both his "Travel Document information or Passport, Form I-217, and Self-Declaration Form."[5] On May 15, 2026, refused to sign the "Warning for Failure to Depart Form I-229(a) [which] explains to [Petitioner that] he must assist [the government] with his removal from the United States."[6] The form also instructs Petitioner to "solicit permission from another country" to accept him to effect his removal.[7] Finally, the government represents that securing travel documents from Vietnam can take time and that there is a significant likelihood of removal in the foreseeable future via a charter flight to Vietnam.[8]

Petitioner has remained in administrative custody for over six months and now seeks a writ of habeas corpus, arguing that continued detention violates the statutory and constitutional boundaries established in *Zadvydas v. Davis*.[9]

---

[1] The parties have not informed the Court that Petitioner has been removed or otherwise released. If either occurred, the Court denies the petition as moot. *See Ortez v. Chandler*, 845 F.2d 573, 575 (5th Cir. 1988) (holding that a habeas petition becomes moot when the habeas relief requested "can no longer be effected").
[2] ECF No. 3-4 at 1.
[3] *Id*. at 1-4.
[4] *Id*. at 3.
[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] *Id*. at 4.
[9] 533 U.S. 678 (2001).

**The Law**

Under 28 U.S.C. § 2241, federal courts have jurisdiction over statutory and constitutional challenges to post-removal-order detention.[10] In *Zadvydas*, the Supreme Court held that post-removal-period detention under 8 U.S.C. § 1231(a)(6) is implicitly limited to a period "reasonably necessary to secure removal."[11] The Court established a six-month presumptive boundary, after which a detainee may seek release by demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[12] If the detainee makes that showing, the burden shifts to the government to produce evidence sufficient to rebut it.[13]

**Analysis**

The *Zadvydas* framework cannot be invoked by a petitioner whose own conduct causes the delay in removal. As an initial matter, neither petitioner in the *Zadvydas* case impeded or sought to impede their respective removals from the United States. Zadvydas was born in Germany to Lithuanian parents, but both Germany and Lithuania refused to accept Zadvydas because he was not a citizen of either country.[14] The Court notes with interest that Zadvydas himself actually applied, and reapplied, for Lithuanian citizenship in an ostensible effort to effect his own removal.[15] The other petitioner in the *Zadvydas* case, Kim Ho Ha, could not be returned to his native Cambodia because the United States had no repatriation treaty with Cambodia in 1999.[16]

---

[10] *Id.* at 688 (2001).
[11] *Id.* at 699.
[12] *Id.* at 701.
[13] *Id.*
[14] *Id.* at 684.
[15] *Id.*
[16] *Id.* at 686.

Moreover, Congress anticipated and addressed the scenario in which an alien detainee resists removal following the entry of a final removal order. Normally, "when an alien is ordered removed, [the government] shall remove the alien from the United States within a period of 90 days (. . . the 'removal period')."[17] But this statutory removal period is explicitly extended, and detention is authorized to continue, if the alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."[18]

In this case, there is nothing in the record showing that there is no significant likelihood of removal in the reasonably foreseeable future. As of the parties' last filings, the government was awaiting travel documents from Vietnam and indicated that it would pursue removal to an alternate third country if removal efforts to Vietnam failed.

The record also establishes that Petitioner refuses to cooperate and actively resists removal. Because Petitioner has "act[ed] to prevent . . . removal" within the meaning of §1231(a)(1)(C), the statutory removal period is suspended by operation of law. Accordingly, Petitioner cannot satisfy the threshold burden under *Zadvydas* to demonstrate that there is "no significant likelihood of removal in the reasonably foreseeable future."[19] A detainee who actively obstructs the execution of a final removal order cannot claim the benefit of the *Zadvydas* presumption, because that presumption addresses governmental inability to effectuate removal—not a detainee's self-imposed impediment to it.

Finally, Petitioner argues that the 28-year period since the issuance of his removal order should preclude his detention, but circumstances have materially changed: there is now a

[17] 8 U.S.C. § 1231(a)(1)(A).
[18] *Id.* § 1231(a)(1)(C).
[19] *Zadvydas v. Davis*, 533 U.S. at 701.

November 2020 agreement "between the U.S. government and Vietnamese government…which prompted Vietnam to accept Vietnamese nationals who [like Petitioner] arrived in the U.S. prior to 1995."[20] The government detained Petitioner because now there "exists a significant likelihood of removal in the reasonably foreseeable future," and it is diligently pursuing such removal to Vietnam as it is statutorily duty-bound to do. To the extent that Petitioner argues he should be afforded an "interview" to explain his detention, the removal and travel documents that Petitioner refuses to sign better serve that purpose. There is no error of a constitutional dimension in this regard.

**Conclusion**

Petitioner's continued detention does not contravene the statutory or constitutional limitations recognized in *Zadvydas v. Davis*. Petitioner is not in custody in violation of the laws or Constitution of the United States. Accordingly, Petitioner has failed to state a cognizable claim for relief under 28 U.S.C. § 2241.

The petition for a writ of habeas corpus [ECF No. 1] is **DENIED**. Any and all pending motions are **DENIED AS MOOT** and the Clerk shall **CLOSE THE CASE**.

**SO ORDERED**.

**SIGNED** and **ENTERED** on November 22, 2026.

**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**

[20] *Id*. at 4.